UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
LAURA SHANAHAN and VINCENT WALSH,

                                  Plaintiffs,

          - against –

KOLMAR LABORATORIES, INC.; BRENNTAG NORTH AMERICA, as a successor-in-interest to Mineral Pigment Solutions, Inc., as a successor-in-interest to Whittaker, Clark & Daniels, Inc.; BRENNTAG SPECIALTIES, INC., f/k/a Mineral Pigment Solutions, Inc., as a successor-in-interest to Whittaker, Clark & Daniels, Inc.; CYPRUS AMAX MINERALS COMPANY; IMERYS TALC AMERICA, Inc., individually and as successor-in-interest to Metropolitan Talc, American Talc, Resource Processors, Inc., and Charles Mathieu, Inc.; IMERYS USA, INC.; IMERYS TALC VERMONT, INC.; JOHNSON & JOHNSON; JOHNSON & JOHNSON CONSUMER INC.; WHITTAKER, CLARK & DANIELS, INC.,

                                  Defendants.
------------------------------------------------------------------x

No. 18-CV-

**NOTICE OF REMOVAL**

TO:   THE JUDGES FOR THE UNITED STATES DISTRICT
       COURT FOR THE SOUTHERN DISTRICT OF NEW YORK:

PLEASE TAKE NOTICE that Defendants Johnson & Johnson ("J&J") and Johnson & Johnson Consumer Inc. ("JJCI"), f/k/a Johnson & Johnson Consumer Companies, Inc. (collectively, the "J&J Defendants"), by and through their undersigned attorneys and pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, hereby remove the action entitled *Shanahan et al. v. Kolmar Laboratories, Inc., et al.*, filed in the Supreme Court of the State of New York, County of New York and bearing Index No. 190330/2018, to the United States District Court for the Southern District of New York.  As required by 28 U.S.C. § 1446(a), the J&J Defendants set forth below a short and plain statement of the grounds for removal:

## NATURE OF THE ACTION

1. On August 14, 2018, Plaintiffs Laura Shanahan and Vincent Walsh, citizens of the State of New York, filed a lawsuit in the Supreme Court of the State of New York titled *Shanahan et. al. v. Kolmar Labs., Inc. et. al.*, No. 190330/2018. (*See* Compl. (attached as **Exhibit A**).)[1]

2. Plaintiffs allege that Laura Shanahan was exposed to various asbestos-containing talc products and now suffers from mesothelioma. (*See id.* ¶¶ 3, 5-6, 13.)

## GROUNDS FOR REMOVAL

### I. REMOVAL IS PROPER BECAUSE THIS COURT HAS SUBJECT-MATTER JURISDICTION PURSUANT TO 28 U.S.C. §§ 1332 AND 1441.

3. This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332(a) because this is a civil action between citizens of different states and the amount in controversy exceeds the sum of $75,000, exclusive of costs and interest.

#### A. The Parties That Are Not Fraudulently Joined Are Diverse.

4. The J&J Defendants are, and were at the time Plaintiffs commenced this action, corporations organized under the laws of the State of New Jersey with their principal places of business in the State of New Jersey, and are therefore citizens of the State of New Jersey for the purposes of determining diversity. 28 U.S.C. § 1332(c)(1).

5. On information and belief, Imerys Talc America, Inc. ("Imerys") is, and was at the time Plaintiffs commenced this action, a corporation organized under the laws of the State of Delaware with its principal place of business in the State of California, and is therefore a citizen of the States of Delaware and California for the purposes of determining diversity.

---

[1] Plaintiffs have incorporated Levy Konigsberg LLP's Standard Asbestos Complaint for Personal Injury filed on May 11, 2018 ("Long-Form Compl."), bearing caption: In re New York City Asbestos Litigation relating to All Asbestos cases under Index No. 782000/2017. (*See id.* ¶ 1.) The removing defendants have attached the Long-Form Compl. to their Notice. (*See* **Exhibit B**.)

2

6. On information and belief, Imerys USA, Inc. is, and was at the time Plaintiffs commenced this action, a corporation organized under the laws of the State of Delaware with its principal place of business in the State of Georgia, and is therefore a citizen of the States of Georgia and Delaware for the purposes of determining diversity.

7. On information and belief, Imerys Talc Vermont, Inc. is, and was at the time Plaintiffs commenced this action, a corporation organized under the laws of the State of Vermont with its principal place of business in the State of California, and is therefore a citizen of the States of Vermont and California for the purposes of determining diversity.

8. On information and belief, Brenntag North America is, and was at the time Plaintiffs commenced this action, a corporation organized under the laws of the State of Delaware with its principal place of business in the State of Pennsylvania, and is therefore a citizen of the States of Delaware and Pennsylvania for purposes of determining diversity.

9. On information and belief, Brenntag Specialties, Inc. is, and was at the time Plaintiffs commenced this action, a corporation organized under the laws of the State of Delaware with its principal place of business in the State of New Jersey, and is therefore a citizen of the States of Delaware and New Jersey for purposes of determining diversity.

10. On information and belief, Cyprus Amax Minerals Company is, and was at the time Plaintiffs commenced this action, a corporation organized under the laws of the State of Delaware with its principal place of business in the State of Arizona, and is therefore a citizen of the States of Delaware and Arizona for purposes of determining diversity.

11. Plaintiffs appear to suggest that Whittaker, Clark & Daniels, Inc. is a New York-based company. (*See* Compl. ¶¶ 8-9.) However, on information and belief, that entity is now

defunct, and its successor-in-interest is not incorporated in New York and does not have its principal place of business in that state.

12. Plaintiffs filed this case in the State of New York and allege that they are citizens of New York. (Compl. ¶ 2.)

13. Although Kolmar Laboratories, Inc. ("Kolmar") is alleged to be a citizen of New York, it has been fraudulently joined in this action and its citizenship should be disregarded for purposes of diversity jurisdiction.[2]

14. Accordingly, there is complete diversity of citizenship between Plaintiffs and the properly joined and served defendants and thus, removal is proper. 28 U.S.C. §§ 1332(a). 1441(a).

**B.     Plaintiffs Have Fraudulently Joined Kolmar, And Its Citizenship Should Therefore Be Disregarded.**

15. "'The doctrine of fraudulent joinder is meant to prevent plaintiffs from joining non-diverse parties in an effort to defeat federal jurisdiction.'" *Sitafalwalla v. Toyota Motor Sales, U.S.A., Inc.*, No. 15-CV-1807(ADS)(GRB), 2016 U.S. Dist. LEXIS 22560, at *9 (E.D.N.Y. Feb. 24, 2016) (quoting *Briarpatch ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 302 (2d Cir. 2004)). "Under the doctrine, courts overlook the presence of a non-diverse defendant if from the pleadings there is no possibility that the claims against that defendant could be asserted in state court." *Id.* (quoting *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 356 (2d Cir. 2011)); *see also In re Rezulin Prods. Liab. Litig.*, 133 F. Supp. 2d 272, 281 (S.D.N.Y. 2001) ("[T]he Second Circuit's standard for fraudulent joinder allows for removal despite the presence of non-diverse defendants if the claims against those defendants have no basis in fact.").

---

[2] The J&J Defendants do not concede that all defendants are properly part of this action. Nonetheless, their inclusion in this lawsuit does not affect the Court's subject-matter jurisdiction.

4

16.     Here, there is no possibility that Plaintiffs could prevail against Kolmar because: (1) while Plaintiffs appear to allege in a conclusory manner that Kolmar produced *its own* talc products to which Ms. Shanahan was exposed, sworn interrogatory responses provided in connection with this lawsuit foreclose that allegation; and (2) while Plaintiffs appear to allege that Kolmar was involved in the production of JJCI's talc products to which Ms. Shanahan was exposed, the allegations are far too thin to establish a colorable basis in law or fact to impose liability on Kolmar and, in any event, are (at most) suggestive of a contract manufacturing relationship between JJCI and Kolmar that cannot give rise to liability under New York law.

17.     *First*, Kolmar should be deemed fraudulently joined because there is no possibility that Plaintiffs could prove their highly vague and amorphous allegation that Kolmar "engaged in tortious conduct through the manufacture, design, testing, supply, labeling and distribution of asbestos-containing talc products to which Laura Shanahan was exposed" (Compl. ¶ 5)—i.e., that Kolmar's *own* purportedly asbestos-containing talc products somehow caused Ms. Shanahan's mesothelioma.

18.     As other courts have recognized, when seeking to join an in-state product manufacturer or distributor to defeat diversity jurisdiction, the plaintiff must plausibly "allege a causal connection between the injury and the conduct of that defendant"—i.e., that the specific defendant actually "contributed in [some] way to her injuries[.]" *Aronis v. Merck & Co.*, No. Civ. S-05-0486 WBS DAD, 2005 WL 5518485, at *1 (E.D. Cal. May 3, 2005) (finding fraudulent joinder because the plaintiff only alleged that "'Vioxx is manufactured and distributed by the defendants'") (quoting complaint); *see also, e.g.*, *Salisbury v. Purdue Pharma, L.P.*, 166 F. Supp. 2d 546, 552 (E.D. Ky. 2001) (defendant pharmacies were fraudulently joined; "Plaintiffs' complaint fails to connect the defendant pharmacies with plaintiffs' acquisition of

OxyContin.  Absent such an allegation, plaintiffs cannot establish proximate cause and their claim against the pharmacies fails as a matter of law."); *Butner v. Boehringer Ingelheim Pharm., Inc. (In re Pradaxa* (*Dabigatran Etexilate) Prods. Liab. Litig.)*, No. MDL 2385, 2013 U.S. Dist. LEXIS 24313, at *28-29 (S.D. Ill. Feb. 22, 2013) (finding fraudulent joinder where the plaintiffs did "not allege that [the defendant] distributed or supplied the Pradaxa *that caused their alleged injuries*") (emphasis added).

19. Here, Plaintiffs have fallen hopelessly short of satisfying this rudimentary standard with respect to their allegation suggesting that Kolmar produced its *own* supposedly asbestos-containing talc products that caused Ms. Shanahan's mesothelioma.  After all, Plaintiffs' recent interrogatory responses identify only **Johnson's Baby Powder** as the talcum powder product to which she was exposed and that purportedly caused her alleged injuries.  (*See* Pls.' Answers to Defs.' Standard Set of Interrogs. & Req. for Prod., A.20 (attached as **Exhibit C**).)  And Johnson's Baby Powder was and is a JJCI product, precluding Plaintiffs' conclusory allegation that any purported Kolmar product contributed to Ms. Shanahan's claimed injuries.

20. *Second*, there is no possibility that Plaintiffs could impose liability on Kolmar based on the bare allegation that "J&J transacted business with Kolmar in New York, including contracting for, among other things, the manufacturing, sampling and testing of *its* cosmetic talc" (Compl. ¶ 6 (emphasis added))— i.e., Johnson's Baby Powder.  For starters, Plaintiffs do not plead any facts specifying what (if any) role Kolmar had in producing Johnson's Baby Powder—much less identify what (if any) duty that non-diverse defendant supposedly breached through its contractual arrangements with J&J.  *See, e.g.*, *Int'l Bhd. of Teamsters Local 734 Health & Welfare Trust Fund v. Philip Morris, Inc.*, Nos. 97 C 8113, 97 C 8114, 1998 U.S. Dist. LEXIS 6831, at *15 (N.D. Ill. May 1, 1998) (finding non-diverse distributor defendants fraudulently joined "[b]ecause

6

the references to the[m] . . . are so sketchy"; "it is unnecessary to analyze the elements of each of the plaintiffs' ten counts"); *Beavers v. DePuy Orthopaedics, Inc.*, No. 1:11 dp 20275, 2012 WL 1945603, at *1-2,*4-5 (N.D. Ohio May 30, 2012) (finding fraudulent joinder; "without a modicum of additional facts" against Orthopaedic Partners, LLC, which was only "mentioned twice," "[p]laintiff has failed to establish a colorable basis for liability"); *In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Prods. Liab. Litig.*, 220 F. Supp. 2d 414, 424 (E.D. Pa. 2002) (finding fraudulent joinder of non-manufacturer defendants where complaints were "filled . . . with general statements levied against all defendants, which most properly can be read as stating claims against the [manufacturers]"); *Shah v. Wyeth Pharm., Inc.*, No. CV 04-8652 DT (MANx), 2005 WL 6731641, at *3 (C.D. Cal. Jan. 18, 2005) (finding fraudulent joinder of non-diverse pharmaceutical company employees because the complaint included "allegations against 'defendants' collectively," many of which were clearly aimed at the companies rather than the individuals, and such "bare factual allegation[s] do not warrant remand").

21. Moreover, even assuming Plaintiffs' vague allegation regarding J&J's and Kolmar's contractual relationship were accompanied by any facts—which it is not—it (at most) suggests that Kolmar manufactured, sampled and tested ***JJCI's*** talcum powder products, which would not support the imposition of design-defect liability on Kolmar in any event. This is so because contract manufacturers "cannot be held liable for producing a product with specifications that are beyond [their] control[.]" Am. Jur. Products Liability § 1385.

22. The contract specifications defense safeguards a manufacturer from liability for injuries allegedly caused by a defect in a product it manufactures in accordance with specifications and plans supplied by a purchaser, as long as the alleged defect is not obvious. The Restatement (Second) of Torts provides that an independent "contractor is not required to sit

in judgment on the plans and specifications or the materials provided by his employer" and is not liable for their insufficiency unless the design or material specified "is so obviously bad that a competent contractor would realize that there was a grave chance that his product would be dangerously unsafe." *See* RESTATEMENT (SECOND) OF TORTS § 404 cmt. a (1965).  This principle makes good sense; otherwise, manufacturing contractors would be required to scrutinize, among other things, the chemistry and labeling of the product, and employ experts to review and evaluate the soundness of the plans and specifications as well as the proposed use of the product.

23. Consistent with this principle, New York courts have recognized that "[w]hen a product is manufactured in accordance with plans and specifications provided by the purchaser, the manufacturer is not liable for an injury caused by an alleged design defect in the product[.]" *Houlihan v. Morrison Knudsen Corp.*, 2 A.D.3d 493, 494 (2d Dept. 2003) (granting contract manufacturer summary judgment where "[t]he affidavit of the plaintiff's engineering expert failed to raise a triable [issue] of fact since it was conclusory and unsupported by any foundational data or facts").

24. That is the case here.  According to the Complaint, "J&J transacted business with Kolmar in New York, including contracting for, among other things, the manufacturing, sampling and testing of its cosmetic talc."  (Compl. ¶ 6.)  And the only fair interpretation of this allegation is that Kolmar, in turn, manufactured, sampled and tested Johnson's Baby Powder according to ***JJCI's*** specifications.  Indeed, there is no allegation in the Complaint suggesting—let alone stating—otherwise.  Accordingly, liability premised on any purported design defect in Johnson's Baby Powder is foreclosed under New York's contract-specifications defense.

25.     Finally, the long-form complaint incorporated by Plaintiffs purports to assert claims against all "Defendants" for manufacturing defect, failure to warn, breach of warranty and civil conspiracy/fraud.  (*See* Long-Form Compl. ¶¶ 18-52, 93-99.)  But there are no particularized allegations against Kolmar to support recovery based on these theories, and as already discussed, the paucity of such discrete allegations against a non-diverse defendant is a telltale sign of fraudulent joinder.  *See Beavers,* 2012 WL 1945603 at *13 (finding fraudulent joinder of non-diverse entity when limited allegations against it "f[e]ll well below the threshold required to meet the plausibility standard required under *Twombly*")

26.     For all of these reasons, Kolmar is fraudulently joined and its citizenship should therefore be disregarded.

   **C.**     **The Amount in Controversy Exceeds $75,000.**

27.     Plaintiffs seek to recover compensatory damages as a result of Ms. Shanahan's diagnosis with mesothelioma, which they claim was allegedly caused by her use of Johnson's Baby Powder.  (*See generally* Compl.)  Plaintiffs also request punitive damages (*see* Long-Form Compl. ¶¶ 106-08), which are included in the amount in controversy.  *See Bell v. Preferred Life Assurance Soc'y*, 320 U.S. 238, 240 (1943) ("Where both actual and punitive damages are recoverable under a complaint each must be considered to the extent claimed in determining [the] jurisdictional amount.").

28.     Where, as here, Plaintiffs allege serious bodily injuries and/or chronic or permanent medical conditions, courts have readily found that the amount-in-controversy requirement is satisfied.  *See, e.g.*, *In re Rezulin*, 133 F. Supp. 2d at 296 (finding that a complaint alleging various injuries from taking a prescription drug "obviously asserts a claim exceeding $75,000"); *Allmon v. Walgreens Co.*, No. 4:09 CV 1151 DDN, 2010 WL 1292172, at *1 (E.D. Mo. Apr. 5, 2010) (holding amount-in-controversy requirement satisfied where plaintiff alleged

9

"extreme weight loss, stunted growth, menstrual problems, ovarian cysts, and diabetes"); *In re Yasmin & Yaz (Drospirenone) Mktg., Sales Practices & Prods. Liab. Litig.*, 692 F. Supp. 2d 1025, 1040 (S.D. Ill. 2010) ("Given the severe and ongoing nature of the injuries alleged, the Court finds that it is plausible and supported by the preponderance of the evidence that the amount in controversy has been established.").

## II. THE J&J DEFENDANTS HAVE COMPLIED WITH ALL REMOVAL PROCEDURES.

29. The J&J Defendants received the service of the summons and Complaint on August 15, 2018. Pursuant to 28 U.S.C. § 1446(b), this Notice of Removal is timely filed within 30 days of such service.

30. The Supreme Court of the State of New York, County of New York, is located within the Southern District of New York. *See* 28 U.S.C. §§ 105(a)(1), 1441(a). Therefore, venue is proper pursuant to 28 U.S.C. § 93(c) because it is the "district and division embracing the place where such action is pending." *See id.* § 1441(a).

31. Pursuant to 28 U.S.C. § 1446(a), copies of all process, pleadings, orders, and other documents on file with the New York Supreme Court are attached hereto as **Exhibit D**.

32. On information and belief, co-defendants Brenntag North America, Brenntag Specialties, Inc., Cyprus Amax Minerals Company, Imerys, Imerys USA, Inc., and Imerys Talc Vermont, Inc. have consented to this Notice of Removal.

WHEREFORE, The J&J Defendants give notice that the matter bearing Index No. 190330/2018 in the Supreme Court of the State of New York, County of New York, is hereby removed to the United States District Court for the Southern District of New York, and requests that this Court retain jurisdiction for all further proceedings in this matter.

Dated:  New York, New York
        September 12, 2018

                                                          Respectfully submitted,

                                                          PATTERSON BELKNAP WEBB & TYLER LLP

                                                          By:  _____
                                                             John D. Winter
                                                             Thomas P. Kurland
                                          1133 Avenue of the Americas
                                          New York, New York 10036
                                          T:  212-336-2000
                                          F:  212-336-2222
                                          E:  jwinter@pbwt.com
                                               tkurland@pbwt.com

                                          *Attorneys for Defendants Johnson & Johnson,*
                                          *and Johnson & Johnson Consumer Inc.*

TO:    Alexandria Awad, Esq.
         LEVY KONIGSBERG LLP
         800 Third Avenue, 11th Floor
         New York, NY 10022
         T:  212-605-6226
         E:  aawad@levylaw.com

         *- and -*

         Suzanne Ratcliffe, Esq.
         MAUNE RAICHLE HARTLEY FRENCH & MUDD, LLC
         150 West 30th Street, Suite 201
         New York, NY 10001
         T:  314-241-2003
         E:  sratcliffe@mrhfmlaw.com
         *Attorneys for Plaintiffs*

         Peter Dinunzio, Esq.
         CLYDE & COMPANY
         405 Lexington Avenue, 16th Floor
         New York, New York 10174
         T:  212-710-3931
         E:  Peter.dinunzio@clydeco.us
         *Attorneys for Defendant Kolmar Laboratories, Inc.*

Daniel R. Kuszmerski, Esq.
HOAGLAND LONGO MORAN DUNST & DOUKAS
40 Patterson Street, PO Box 480
New Brunswick, NJ 08903
T:  732-545-4717
E:  dkuszmerski@hoaglandlongo.com
*Attorneys for Brenntag North America (successor to WCD, Inc.),*
*and Brenntag Specialties, Inc. (successor in interest to WCD, Inc.)*

Andrew Sapon, Esq.
LITCHFIELD CAVO LLP
420 Lexington Ave., Suite 2104
New York, NY 10170
T:  212-434-0100
E:  sapon@litchfieldcavo.com
*Attorneys for Cyprus Amax Minerals Co.,*
*Imerys Talc America, Inc., Imery's Talc Vermont, Inc.,*
*and Imery's USA, Inc.*

Jessica Seiden, Esq.
LANDMAN CORSI BALLAINE & FORD, P.C.
One Gateway Center, Suite 400
Newark, NJ 07102
T:  973-623-2700
E:  jseiden@lcbf.com
*Attorneys for Whittaker, Clark & Daniels, Inc.*