UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
                                    :

LAURA SHANAHAN and VINCENT WALSH,   :

                                    :

                Plaintiffs,         :

                                    :         18-CV-8317 (JMF)

      -v-                    :

                                    :     MEMORANDUM OPINION

KOLMAR LABORATORIES, INC., et al.,     :      AND ORDER

                                    :

                Defendants,     :

                                    :
-----------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

      Laura Shanahan and Vincent Walsh ("Plaintiffs") brought this products-liability action

against Kolmar Laboratories, Inc. ("Kolmar") and eight other entities (collectively,

"Defendants") in New York state court, seeking compensatory and punitive damages related to

Defendants' alleged manufacture and sale of asbestos-containing talc products, to which —

Plaintiffs allege — Shanahan was exposed, causing her to develop mesothelioma. *See* Docket

No. 7-1 ("Compl.") ¶¶ 5-6; Docket No. 7-2 ("Standard Compl.") ¶¶ 18-108. Although Plaintiffs

and Kolmar are citizens of New York, *see* Compl. ¶¶ 2, 4, and the Court would thus appear to

lack diversity jurisdiction, Defendants Johnson & Johnson and Johnson & Johnson Consumer

Inc. (collectively, the "J&J Defendants") removed the action to this Court, invoking the doctrine

of fraudulent joinder. *See* Docket No. 7 ("Notice of Removal"). Under that doctrine, "courts

overlook the presence of a non-diverse defendant if from the pleadings there is no possibility that

the claims against that defendant could be asserted in state court." *Briarpatch Ltd., L.P. v*

*Phoenix Pictures, Inc.*, 373 F.3d 296, 302 (2d Cir. 2004). The removing party bears the burden

of showing fraudulent joinder by "clear and convincing evidence, with all factual and legal

ambiguities resolved in favor of" Plaintiffs. *Id.* Plaintiffs now move to remand and for

attorney's fees. *See* Docket No. 23; Docket No. 24 ("Pls.' Mem."). For the reasons stated

below, the Court grants Plaintiffs' motion to remand, but denies their request for attorney's fees.

The J&J Defendants press two arguments in support of their fraudulent joinder theory.

First, they contend that Plaintiffs have "not pled any facts specifying what . . . role Kolmar had in

producing the talcum powder to which Ms. Shanahan was exposed." Docket No. 30 ("J&J

Opp'n"), at 5. But that is not the case, as Plaintiffs explicitly allege in their Complaint that

"Kolmar engaged in tortious conduct through the manufacture, design, testing, supply, labeling

and distribution of asbestos-containing talc products to which [Ms. Shanahan] was exposed."

Compl. ¶ 5. While that general allegation would arguably be insufficient under federal pleading

standards, the question at this stage is whether Plaintiffs' pleadings are enough to give them

some possibility of success against Kolmar in the *state* court from which the action was

removed, *see, e.g.*, *MBIA Ins. Corp. v. Royal Bank of Canada*, 706 F. Supp. 2d 380, 394

(S.D.N.Y. 2009), and it is well established that New York's pleading standards are "more lenient

than the 'plausibility' standard applicable in federal courts," *Williams v. Citigroup, Inc.*, 659

F.3d 208, 215 n.4 (2d Cir. 2011) (per curiam). New York requires only that a complaint "plead

facts with sufficient particularity 'to give the court and parties notice of the transactions,

occurrences, or series of transactions or occurrences, intended to be proved and the material

elements of each cause of action or defense.'" *Segal v. Firtash*, No. 13-CV-7818 (RJS), 2014

WL 4470426, at *4 (S.D.N.Y. Sept. 9, 2014) (quoting N.Y. C.P.L.R. § 3013). That is, a

complaint must plead facts sufficient to "identify the transaction and indicate the theory of

redress to enable the court to control the matter and the adversary to prepare." *Guggenheimer v.*

*Ginzburg*, 372 N.E.2d 17, 21 (N.Y. 1977); *see also* Siegel, N.Y. Prac. § 208 (6th ed. 2018)

(noting that the New York pleading standard is satisfied if a complaint gives "notice of the event out of which the grievance arises" and "cover[s] the substantive material elements that make up the particular cause of action relied on" (internal quotation marks omitted)).  Resolving all factual and legal ambiguities in Plaintiffs' favor, and taking into account New York's more lenient pleading standard, Plaintiffs' allegations connecting Kolmar's conduct to Shanahan's injuries are particular enough to create at least *some* possibility that Plaintiffs could recover against Kolmar in New York's courts.  *Cf. Briarpatch*, 373 F.3d at 302-03.

The cases cited by the J&J Defendants are not to the contrary.  In two of them, district courts denied motions to remand because the plaintiffs had failed to allege *any* connection between the fraudulently joined defendant and their own injuries.  *See, e.g.*, *Aronis v. Merck & Co.*, No. 05-CV-0486 (WBS), 2005 WL 5518485, at *1 (E.D. Cal. May 3, 2005); *Salisbury v. Purdue Pharma, L.P.*, 166 F. Supp. 2d 546, 548-49 (E.D. Ky. 2001).  Thus, to describe those cases is to distinguish them; as discussed, Plaintiffs *do* allege some connection between Kolmar and Shanahan's injuries.  *See* Compl. ¶ 5.  Meanwhile, in *Grant v. Johnson & Johnson*, No. 17-CV-3356 (GBD), 2017 WL 6812035 (S.D.N.Y. Dec. 19, 2017), the plaintiff's counsel *admitted* that he had "inadvertently" named a defendant against whom the plaintiff's claims had "no basis in fact" through hasty "copying and pasting."  *Id.* at *3.  Moreover, the case arose in a different posture — the allegedly fraudulently joined defendant was added *after* removal — so a more defendant-friendly standard applied.  *See id.* at *2.  At bottom, Defendants' own cases underscore how hard it is to establish fraudulent joinder.  Courts find fraudulent joinder only where "the allegations in the plaintiff's pleading are shown to be so clearly false and fictitious that no factual basis exists for an honest belief on the part of plaintiff that there is liability — in short that the joinder is without any reasonable basis in fact and is made without any purpose to

3

prosecute the cause in good faith." *In re Rezulin Prods. Liab. Litig.*, 133 F. Supp. 2d 272, 281 (S.D.N.Y. 2001). The J&J Defendants have not made that showing here.

Second — conceding for the purposes of argument that Kolmar was at least a "contract manufacturer" of J&J Baby Powder, the asbestos-containing talc product to which Plaintiffs allege Shanahan was exposed — the J&J Defendants argue that Kolmar would be immune from liability under New York law. *See* J&J Opp'n 8. It is the case that, under New York law, a "contractor is justified in relying upon the plans and specifications which he has contracted to follow, unless they are so apparently defective that an ordinary [contractor] of ordinary prudence would be put upon notice that the work was dangerous and likely to cause injury." *Ryan v. Feeney & Sheehan Bldg. Co.*, 145 N.E. 321, 321-22 (N.Y. 1924). But, as Plaintiffs point out, *see* Docket No. 32 ("Reply Br."), at 6, when Kolmar filed its answer in this Court, it failed to raise the contract-specifications affirmative defense as one of its seventy-three affirmative defenses, *see* Docket No. 26, at 3-13. More significantly, the contract-specifications defense implicates factual questions that remain unresolved at this stage. Most prominently, for Kolmar to prevail on the defense, a factfinder would have to conclude that it manufactured the talc products according to someone else's "plans and specifications" and that those plans and specifications were not "so apparently defective" that an ordinarily prudent manufacturer would have been on notice of the dangerous defect. *Ryan*, 145 N.E. at 321-22. At a minimum, the latter question remains in dispute, as Plaintiffs allege that Kolmar learned that the talc products it manufactured were contaminated with asbestos as early as the 1970s. *See* Compl. ¶¶ 11-12; *see* Reply Br. 6-10. Resolving that "factual . . . ambiguit[y]" in Plaintiffs' favor, *see Briarpatch*, 373 F.3d at 302, the Court cannot conclude that there is "no possibility" that Plaintiffs' claims against Kolmar

"could be asserted in state court," *id.*, or — alternatively — that there is "no reasonable basis"

for those claims, *see In re Rezulin Prods. Liab. Litig.*, 133 F. Supp. 2d at 280 n.4.

Thus, the J&J Defendants have failed to carry their burden to show that Kolmar was

fraudulently joined for the purpose of defeating diversity jurisdiction.  As diversity jurisdiction

was the sole basis for removal, *see* Notice of Removal ¶ 3, remand is required, *see, e.g.*, *Exxon*

*Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 554 (2005).[1]  Nevertheless, the Court

rejects Plaintiffs' request for attorney's fees pursuant to 28 U.S.C. § 1447(c), which authorizes a

court issuing a remand order to impose "payment of just costs and any actual expenses, including

attorney fees, incurred as a result of the removal."  28 U.S.C. § 1447(c).  Although an award of

attorney's fees is "discretionary in the first instance," *Morgan Guar. Tr. Co. of N.Y. v. Republic*

*of Palau,* 971 F.2d 917, 923-24 (2d Cir. 1992), "[a]bsent unusual circumstances, courts may

award attorney's fees under § 1447(c) only where the removing party lacked an objectively

reasonable basis for seeking removal," *Martin v. Franklin Capital Corp.,* 546 U.S. 132, 141

(2005).  Here, although the J&J Defendants' arguments fell short, the Court cannot say that they

lacked an "objectively reasonable basis for seeking removal" given the parsimonious nature of

Plaintiffs' allegations against Kolmar.  Considering "the nature of the case [and] the

circumstances of the remand," as well as "the effect on the parties," *Prescia v. U.S. Life Ins. Co.,*

No. 10-CV-2518 (KMW), 2011 WL 70569, at *2 (S.D.N.Y. Jan. 6, 2011) (internal quotation

---

[1]      On February 20, 2019 three defendants — Imerys Talc America, Inc., Imerys Talc
Vermont, Inc., and Imerys Talc Canada Inc. — notified the Court that they had "commenced
bankruptcy cases in the United States Bankruptcy Court for the District of Delaware" and that
this action was therefore "automatically stayed as against" those three defendants pursuant to the
Bankruptcy Code's automatic stay provision, 11 U.S.C. § 362; *see* Docket No. 39.  That
development does not, because it cannot, affect the question of whether to remand for lack of
subject-matter jurisdiction, which — in any event — must be assessed as of the time the action
was removed, when the bankruptcy stay did not exist. *See, e.g.*, *Sanders v. Farina*, 67 F. Supp.
3d 727, 729-31 (E.D. Va. 2014); *id.* at 730 n.1 (collecting cases).

marks omitted), the Court declines to exercise its discretion to award attorney's fees in this case.

*See, e.g.*, *Turner Constr. Co. v. Harleysville Ins. Co. of N.Y.*, No. 14-CV-8014 (JMF), 2014 WL

6682625, at *3 (S.D.N.Y. Nov. 25, 2014).

For the foregoing reasons, Plaintiffs' motion to remand is GRANTED, but their request

for attorney's fees is DENIED.  The Clerk of Court is directed to terminate Docket No. 23; to

remand the case to the Supreme Court of New York, New York County; and to close the case.

SO ORDERED.

Dated: February 26, 2019
      New York, New York                               JESSE M. FURMAN
                                            United States District Judge